HARE v. SISTERS OF MERCY OF THE FEMALE ACADEMY OF FORT SMITH, ARKANSAS.

Opinion delivered November 18, 1912.

1. WILLS—TRUST—CREATION.—A will which devised one-half of the testator's estate to the Sisters of Mercy at Fort Smith "for the support and maintenance" of a daughter of testatrix during her life, and after her death to the said sisters "for the purpose to educate poor Catholic children," did not state the motive which led her to make an absolute gift of the property to the Sisters of Mercy, but imposed an obligation for the support and maintenance of her daughter, and created an express trust for that purpose. (Page 555.)

2. SAME—TRUST—ENFORCEMENT.—Where trustees under a will, which imposed upon them the care and custody of an imbecile daughter of the testatrix, accepted the trust and took care of the daughter for nineteen years, and by reason of a defect in the will were compelled to pay $5,500 to a grantee to whom they had conveyed part of the land devised, they will be placed *in statu quo* by permitting them to recover such amount from the estate of such daughter, and will continue to be liable for her support during the remainder of her life. (Page 556.)

Appeal from Sebastian Chancery Court, Fort Smith District; *J. V. Bourland,* Chancellor; reversed.

### STATEMENT BY THE COURT.

This suit was brought by appellees to recover on a *quantum meruit* for the maintenance and support of Ella Hare, for nineteen years, at the rate of $150 per month, and resulted in a judgment in their favor for $41,330.76, which the court declared a lien against her estate, and ordered the same sold in satisfaction thereof. From this judgment the appeal comes.

The mother of Ella Hare, an imbecile, disposed of her estate in Sebastian County by will. The clauses of same which are necessary to be considered are as follows:

"I give devise and bequeath to the Sisters of Mercy at Fort Smith, known as Saint Ann's Convent, one-half of all my estate, real and personal, after deducting the legacies and bequest mentioned in this, my last will and testament, for the support and maintenance of my daughter, Ella Hare, during her life, and after the death of my said daughter, Ella Hare, I give, devise and bequeath to the said Sisters of Mercy the said half of my estate, real and personal, for the purpose to educate poor Catholic children.

"I give, devise and bequeath to the pastor of the parish of the Church of the Immaculate Conception, at Fort Smith, in the county of Sebastian, State of Arkansas, half of all my estate, real and personal, to be used by the said pastor for the said purposes of helping to establish a school in said parish for the education of Catholic boys and for helping to educate young men of the parish for the priesthood."

John Hare, the husband of Mary A. Hare and the father of the imbecile, Ella Hare, died possessed of a considerable estate in 1883, making his wife the sole beneficiary in his will and also the executrix.

Appellees, the Sisters of Mercy, are a corporation, a benevolent, religious body, associated in its work with the Church of the Immaculate Conception at Fort Smith, Arkansas, and has been since its organization in 1860.

John and Mary A. Hare, deceased, were both members of said church. Mary A. Hare administered the estate of her said husband, and the administration was closed long before her death in 1893, and at the close thereof the probate court of Sebastian County made an order vesting the entire estate of John Hare in her. The estate consisted of real estate in and

near to Fort Smith, of the value of about $26,000 at the time
of her death.   Only a small part of it was improved, and Mary
A. Hare had no estate at the time of his death, but received
$2,000 insurance on his life, erected some buildings on the real
estate formerly owned by him, and acquired other real estate
of her own, part of which she improved, and her real estate,
when she died was worth $9,800, and her personal estate
$1,347.87, and the demands against her estate amounted to
$4,276.55. After her death, her administrator was appointed
executor of the estate of Ella Hare, and, upon the court's
finding that she was mentally incompetent, directed the
payment to the Sisters of Mercy of $25 per month for her care,
which was done as long as the administrator lived.   After his
death, Sister Aloysius, now Mother Superior of appellee, was
appointed guardian, and acted as such until A. A. McDonald
was appointed. During the administration of her estate
appellees received from the administrators funds arising from
the sale of real estate, which belonged to John Hare at his
death and other sources, in all, the sum of $6,778.66.   The
settlements of the administrator of Mary A. Hare's estate show
that he paid appellee, on Ella Hare's account from 1893 to
1904, the sum of $3,174.93, and that they received from the
sale of lot 7, block 564, Reserve Addition to the city of Fort
Smith, which belonged to the estate of Mary A. Hare, $9,000.
During the administration of the estate, all the real property
owned by John Hare at the time of his death, except that part
of same sold and conveyed to Tillman Shaw, was sold by Matt
Gray, administrator of her estate, who, at the time, received
from said estate $6,955, in addition to the $3,000 for lands
condemned, belonging to said estate of John Hare, and, in
addition to these sums, he received, as shown by annual
statements, exclusive of the fourth annual statement, which
was lost, as such administrator, $15,187.63, rent on the im-
proved property belonging to the estate of John Hare and
Mary A. Hare, and his accounts show the disposition of all
funds collected by him from all sources.   Appellee, claiming
to be the owner thereof through the will of Mary A. Hare,
conveyed to Tillman Shaw, certain property, three lots in the
city of Fort Smith, and a tract of land known as the Hare
Wagon Yard, which had belonged to the estate of John Hare

for $21,000, one of which lots, valued at $9,000, was the property of Mary A. Hare at the time of her death. The $21,000 received was equally divided between appellee and the pastor of the Church of the Immaculate Conception of Fort Smith in accordance with the direction of the will of Mary A. Hare. After such conveyance, A. A. McDonald was appointed guardian of Ella Hare, and brought suit to recover various pieces of land sold by the executrix of the estate of John Hare and the administrator of the estate of Mary A. Hare and of said property which had belonged to the estate of said John Hare, which was sold to said Tillman Shaw, and recovered same, the will of said John Hare being declared invalid as to Ella Hare, his only surviving child, whose name was omitted therefrom. *McDonald* v. *Shaw,* 92 Ark. 15. The lands recovered in said suits and now owned by said Ella Hare are of the reasonable value of $34,000, and consist, nearly all, of real estate in the city of Fort Smith, a large part of which is unimproved.

The Sisters of Mercy had to refund to Tillman Shaw $5,500, the half of the purchase price of said property, belonging to the estate of John Hare, sold by them to him.

They took charge of Ella Hare upon the death of her mother, and have cared for her properly and well until now. She is an imbecile, about forty years of age at this time, can neither talk nor walk, and has about as much intelligence as a child of three or four years, and has had constant nursing and attention and been well provided for during all this time.

Upon the recovery of that portion of said estate which belonged to John Hare, they brought this suit, alleging:

"That Mary A. Hare believed at the time of making her will that she was the owner of all of the property devised to her by John Hare, and intended by her will to so devise all of said property, and thought she had done so; that plaintiff, at the time it assumed charge of Ella Hare, in good faith believed that, under the will of Mary A. Hare, it was to receive, not only such property as in fact belonged to the estate of Mary A. Hare, but also such property as belonged to the estate of John Hare, and which Mary A. Hare intended to devise to plaintiff under her said will. That, acting upon such belief, it assumed the charge of Ella Hare, and was willing to be bound by the terms of said will as it and the said Mary A. Hare

understood said will to be, and give the said Ella Hare such attention as she might need as long as she lived."

That, because of the decree of the court adjudging the will of John Hare invalid and that Ella Hare was entitled to all of real estate left by him at his death, "the consideration for the maintenance and support of said Ella Hare failed, and said plaintiff has not been paid for the support and maintenance of said Ella Hare for the time for which she has been taken care of, and that it was worth $150 per month, making a total of $31,500 for which judgment with interest was prayed."

The answer denied the allegations of the complaint and that plaintiffs had "received no adequate compensation for the maintenance and care bestowed upon her, and says that by its own admission in its complaint filed herein it has cared for her under and by virtue of the terms in the will of Mary A. Hare," and alleges further that the estates of both John Hare and Mary A. Hare have been wound up and finally settled, the administrators discharged, and that appellee has received "from the estate of Mary A. Hare all it could ever hope to receive and its obligation to support, maintain and care for this defendant as long as she lives was irrevocably fixed."

The court rendered judgment for $31,000, and declared same a lien against the property of Ella Hare, and ordered it sold for satisfaction thereof. From this judgment this appeal comes.

*Winchester & Martin*, for appellant.

If appellees believed when they took charge of appellant that the will of John Hare was valid, and that they would receive one-half of both the John Hare and Mary A. Hare estates, subject to debts and legacies, and if Mary A. Hare was never advised that the last will of her husband was ineffectual to devise his estate to her, these beliefs do not alter the case as to Ella Hare.

One is "bound by whatever, affecting his title, is contained in any instrument through which he must trace title, even though it be not recorded, and he have no notice of its provisions." 97 Ark. 397; 32 Minn. 313. The John Hare estate did not pass under the will of Mary A. Hare. 92 Ark. 15.

If the question at issue be treated in the light of a contract, that is that the devise to appellees in the will of Mary A. Hare was an offer which they accepted under the belief that the devise carried both estates, and that, since it did not carry the estate of John Hare, the consideration failed and they have the right to rescind, etc., it is to be remembered that Ella Hare was not a party to, and because of her mental incapacity could never have knowledge of, such contract. There could be no rescission. 26 Ark. 309, 313-14; 25 Ark. 183; 17 Ark. 237, 238. It would be impossible to place her *in statu quo.* *Id.*

Appellees are estopped to maintain this suit by their conduct and by the receipt of benefits under the will of Mary A. Hare. Appellees' claim is barred by the statute of limitations for any amount prior to three years preceding the institution of the suit, if it is good for any amount at all.

*Read & McDonough* and *Falconer, Youmans & Woods,* for appellee.

1. The estate of an insane person, like that of an infant, is liable for necessaries. 23 Ark. 418; 22 Cyc. 1176; *Id.* 1200, 1201.

2. The services rendered by appellee were rendered under an implied contract with appellant to pay their reasonable value, and such contract is entire and continuing, and the statute of limitations does not apply. 42 Pac. 603; 63 N. E. 51; 33 N. E. 456; 6 Ind. App. 268; 60 Pac. 312; 61 Kan. 533; 56 Atl. 342; *Id.* 728; 72 N. H. 254; 68 Pac. 252, 28 Wash. 52; 35 Ill. App. 319; 1 Ind. App. 284, 27 N. E. 573; 27 N. E. 511; 69 Pa. St. 144; 70 Tex. 279, 8 S. W. 40; 36 Mich. 206; 40 Ia. 38; 10 N. J. Eq. 370; 89 N. Y. App. Div. 398; 121 N. C. 238; 58 Atl. 293, 66 L. R. A. 591; 51 Atl. 632; 125 Ga. 47.

3. Appellant's pleas of laches, estoppel and *res judicata* are without merit. As to laches, if the claim is a continuing one, to be presented at any time while the services continue and for three years after they cease, the claim can not be defeated by a failure to demand payment at an earlier date. 16 Cyc. 153; 20 Fed. 277; 31 Barb. 230. And if the statute of limitations has not run, necessarily there can be no laches. 10 N. J. Eq. 370; 89 App. Div. (N. Y.) 395.

There is nothing in the acts or conduct of appellee which would afford any ground for the application of estoppel. Estoppels are not favored. 15 Ark. 316. To be binding, they must be mutual. 13 Ark. 217. There must generally be some intended deception in the conduct or declarations of the party to be estopped. 93 U. S. 326, 335. Estoppel does not arise where one is ignorant of his rights. 43 Ark. 21. See also 16 Cyc. 734; 111 La. 441, 35 So. 632; 97 Ark. 49. The claim of *res judicata* is met by the language of this court in its opinion delivered on rehearing in the case of *McDonald v. Shaw*, 92 Ark. 15, see page 28.

KIRBY, J., (after stating the facts). It is not disputed that the estates of both John and Mary A. Hare have been wound up and finally settled, and all the property belonging to both disposed of, except the said property sold to the said Tillman Shaw, nor can it be disputed that the Sisters of Mercy have realized out of said estate all they would have received, had the will of John Hare operated to convey his entire estate to Mary A. Hare, as they thought it did, except the $5,500 they had to refund to Tillman Shaw, by reason of their not being the owners of the one-half undivided interest they attempted to convey to him, and they say they would have been satisfied with this disposition of the property of these estates and willing to care for the imbecile, Ella Hare, throughout her life in consideration thereof, and took charge of her and the estate with the expectation of doing so.

It was the intention of Mary A. Hare, as plainly expressed in her will, to leave one-half of her estate, after the payment of her debts and the small bequests and legacies, to appellees, the Sisters of Mercy, for the support and maintenance of her daughter Ella Hare, during her life, and thereafter to said Sisters of Mercy to be used in educating poor Catholic children. It was doubtless. also, John Hare's intention to leave all of his estate to his wife, Mary A. Hare, in accordance with his will, which was invalid under the law, as against Ella Hare, his only child, her name having been omitted therefrom. It may be, and doubtless is, true that the Sisters of Mercy believed that the will of Mary A. Hare conveyed, not only her own estate, but also all the estate that had formerly belonged to her husband and was attempted by him to be devised

to her, and, so believing, they took charge of Ella Hare under the provisions of the will and have since furnished her care, maintenance and support. The will of John Hare was inoperative to convey his estate to Mary A. Hare, and some of it has been recovered by Ella Hare, and the Sisters of Mercy have been required to refund $5,500, that portion of the purchase money received by them from the sale of the one-half undivided interest of certain of his said property, which they sold and attempted to convey, claiming to be the owner thereof under the will of Mary A. Hare. On that account, they claim that the consideration for their taking charge of Ella Hare and furnishing her maintenance and support, under the provisions of her mother's will, has failed, and that they are entitled to pay for the reasonable value for the care, maintenance and support so furnished to Ella Hare for the past nineteen years.

It is manifest from the provisions of the will that Mary A. Hare was not incidentally stating the motive which led her to make an absolute gift of the property to the Sisters of Mercy, but intended, as clearly expressed, to impose an obligation for the support and maintenance of her imbecile daughter throughout her life, and an express trust was thereby created. *Bloom* v. *Strauss*, 73 Ark. 57. It was a gift in trust, with the right upon the part of the trustee to use all of said property, not required for the maintenance and support of said child, at their own discretion and without accounting therefor, and they accepted said trust. It is undisputed that they have received from the two estates of the parents of this imbecile ward the sum of $16,500, which they have not returned. It would be manifestly unfair and unjust now to permit them to repudiate the obligation and the trust and recover, upon a *quantum meruit* for services already rendered and maintenance furnished, a sum more than sufficient to consume the entire estate belonging to said imbecile, with no corresponding obligation on their part to maintain, support and care for her in the future, as the decree rendered below does, thus defeating the obvious purpose of the testator and leaving entirely without protection for the remainder of her life the imbecile ward, Ella Hare, while permitting the consumption of all the remaining estates of both her father and mother by

the trustee who expected, on accepting the trust and taking charge of her, to care for, maintain and support the said Ella Hare throughout her whole life for the one-half of said estates which they understood was devised to them for that purpose. It is true, as urged, that the imbecile has been as well cared for by them as she could have been by any one, and that it was the intention of her father to leave all of his estate to her mother, and of her mother to leave all of her estate to the church and appellee, except the few small legacies provided for, for her care and support during her lifetime and the church's benefit thereafter; but it does not follow, as insisted, that it would be only equitable that they should have what they thought they were going to receive, and what their testator intended to give, and that they would receive nothing more if the judgment of the lower court was affirmed. The parties can not be placed *in statu quo*, and the majority of the court have concluded, since they have expressed a willingness to carry out the purpose of the trust and care for and maintain said Ella Hare for life, under the provisions of the will, if they had received what they thought they were going to get, that the court, in the administration of the principles of equity, will permit them to recover of the said Ella Hare the $5,500 they have had to refund of the purchase money of the lands sold to Tillman Shaw, afterwards recovered by Ella Hare, and charge the same as a lien against the property of Ella Hare. By so doing they will be placed in the position they would have occupied had no suits been brought by Ella Hare for the recovery of the lands of her father's estate, and his will had, in law, as it attempted to do in fact, conveyed same to her mother.

They are entitled to a judgment for that amount with interest from the time of its return, and the same to be declared a lien and enforced against her property, leaving the obligation of the trust created by the will for her support throughout the remainder of her life unimpaired.

The court should have rendered such judgment, and, for the error of the decree as rendered, the cause is reversed and remanded with directions to enter a decree in accordance with this opinion.

McCulloch, C. J., (dissenting). I concur fully in the

conclusion of the majority that the limit of appellee's recovery must be the sum of $5,500 which is to be refunded to Tillman Shaw, being the price of the property sold to him. This restores appellee to the situation which it would have occupied if it had received the expected benefits under the will of Mary Hare, and it can justly claim no more.

I do not, however, agree that appellee ought to recover anything from the estate of Ella Hare. It voluntarily accepted the custody of the imbecile under the terms of Mary Hare's will, and if less property was realized than expected that was the mistake of appellee alone, and it is my opinion that no principle of equity will justify a claim against the estate of an imbecile because of disappointment in the quantity of property received under the will. Mary Hare did not attempt to devise any property except that which she owned, so it can not be said that there was a mutual mistake. I think there is no equity in the complaint, and that it should be dismissed.